UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WERONIKA JANCZUK,<br><br>               Plaintiff,<br><br>        -against-<br><br>UNITED STATES OF AMERICA;<br>DEPARTMENT OF HEALTH AND HUMAN<br>SERVICES; ASSOCIATION OF AMERICAN<br>MEDICAL COLLEGES; PENGUIN RANDOM<br>HOUSE,<br><br>               Defendants. | 1:24-CV-3420 (LTS)<br><br>ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Weronika Janczuk, who is appearing *pro se*, filed her complaint invoking both the court's federal question and diversity jurisdiction seeking injunctive relief. She sues: (1) the United States of America; (2) the Department of Health & Human Services ("HHS"), a federal agency; (3) the Association of American Medical Colleges ("AAMC"); and (4) Penguin Random House.

By order dated May 6, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See*

Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is

obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and

interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted,

emphasis in original).

## BACKGROUND

Plaintiff alleges the following:

Schools in the USA might educate students about sex and options for
contraception and/or fertility-management. Schools in the USA might elect to
participate in a practical "sexual health" campaign by offering their students free
and/or otherwise contraceptives. Academically-disciplinary research demonstrates
sociological possible-unto-actual phenomena of a "systemic" and potentially-to-
actually "negative" kind in the potentially-unto-actually deteriorated lives of one-
parent families (read: for objective clarity: objectively-codified institutions,
herein, specifically of the kind otherwise known as 'family,' but the plaintiff
would elect that sociological research demonstrates differentiating sociological
lives and definitions of family, in theory and praxis both), institutions that house
offspring without marriage, corpuses diagnosed with sexually-transmitted-
infections (STIs) and/or diseases (STDs), and more are the consequences of some
dimension of intentional-to-non-intentional, educated-to-non-educated decision-
making-maybe process of sex, sex often, sex debuted young, sex young, sex
without protection, sex uneducated, and otherwise. Research suggests impacts on
the economy and further sociological, social, cultural, corporeal, medical-
psychiatric, and other dimensions of the human lifestyle. Modern-day research
confirms that fertility is an entirely-understandable sheer-biological process in its
foundational infrastructural mechanics (as in, that pregnancy is never random and
that it has entirely-observable-and-experi[me]ntal foundations, etc.). Not all
persons in the USA might understand this premise. Institutionally, the USA,
including the HHS, might not have sought out a federally-governing decision-
making body to guarantee coherent and well-pedagogized access to the highest
form of research. . . . [*sic*]

(ECF 1, at 3.)

Plaintiff also alleges the following:

A particular form of psychiatric tendency - - of the kind, perhaps to be agreed-
upon definitionarily, as an "authent" (a word from pop psychology, including, say,
generally the corpus of academic and popular speaker Brene Brown, PhD, she a
speaker on platforms that include TED Talks) - - is such that incoherent or non-

research-backed integrationalist project when offering sex education via its public school districts in the Independent School District 196 (ISD196) in the American state of Minnesota (MN). It is noted here that MN and NY are separate entities, and that the plaintiff understands that the federal sovereignty is engaged above both states' individual jurisdictions, in accord with her contemporary residence, in NY. Modern-day programs give access to biomedical information that has a daily theoretical and practical impact on biomedical life. Modern-day medical schools do not necessarily guarantee medical information that can support the biomedical information otherwise publicly available, in research scaffolds, including the work of modern-day medical doctor Pilar Vigil, MD, PhD. Institutional scaffolds do not support the personal freedom and interest of persons to live academically-oriented lives, a form of abuse of equality and equal access as well as the freedom to determine one's own medical provider, clinic, insurance, and otherwise, as well as, ultimately, to make the decisions with regards to biological and biomedical processes of one's own, in accord with one's own freedom. [*sic*]

The plaintiff takes psychiatric abuses without systems prepared to acknowledge disciplinary life. The plaintiff takes psychiatric abuses when a clearer system from the adjudication of not-decision-making-based-in-spheres-private but in the adjudication of decision-making-based-in-spheres-public life disproportionately places stressors-social, including in the visibility of behaviors of psychiatric immaturity or torment or neglect (herein, given the psychiatric state's great delicacy and sensitivity and mystery, referring to existing and binding standards in the Diagnostic Standard Manual (DSM) by which psychiatrists, therapists, and social workers determine actual abuse cases and met abuse's need, one, and two, referring by extension to pop psychology available on the public book marketplace), that changes the patterns of personal life by inhibiting access to realities where that social impact is guaranteed to be absent. The environment copes with discarded fetuses, menstruation pads, and more. No guarantee of non-life-eternal or other forms of philosophical debates is made, including, thus, on the post-life-temporal-proximate environment is litigated. The plaintiff takes psychiatric abuse when there is not an equal litigation or one democratically-evaluating research available.

(*Id.* at 4-5.)

Plaintiff seeks the following relief:

that the USA, the HHS, and the AAMC cognize and legally-endorse the serious and research-based work at FEMM Health . . . , noting that [it] is a single institution, one, and two, that its work equalized and balances all institutions' working on issues of contraception and pharmaceutical tooling of a contraceptive kind, as a way of honoring a form of academically-based biological provision and admitting into legal scaffolds the necessary language to freely adopt its principalities, FEMM being a non-profit organizing teaching and systemic procedurals for medical providers that allows women to operate as autonomous

agents of their own hormonal life, as it both indicates health as well as reflects states of changing fertility, and more; that the USA, the HHS, the AAMC require FEMM Health Medical Management training for every person working in the medical field; that – with the right provisions – these institutions require the same training for every person; and that – pending agreement – these institutions require FEMM Training, be it the basic civilian package or the more-extended Teacher Training packing – for every person[;] . . . that the USA consider a legally-mandated formation of the kind "sexual education" rooted in a philosophy of decision-making, psychology, and fertility-management, with all the necessary environment provisions, that meets a more universally-accessible and modern-day aesthetic, to be agreed-upon democratically as need be, that one finds and that fits the corporate-branding lives of corporations such as Google, a minimalistic and clean resource that serves persons of all kinds and that had been daily, infinitely popular since its admission into public life; . . . that the USA find it possible to admit somewhere -- say, at the level of the HHS, in some kind of an honorary constitution – some form of basic-to-non-basic framework for language and normativity over all realities related to sexual acts, diseases, partner histories, decision-making and risk-and-responsibility and morality-and-ethics and utility-and-consequence and other framework, as a way to weigh the social difficulties and to foster a form of segregation-or-similar in an a way that mimics that of Democrat-versus-Republican choice-based publicly-disclosed or affiliations, or otherwise, including statuting in public that it is not interested in any discourse on the private sphere whatsoever but then also finding ways to negotiate disciplinary research, political differentiations, philosophies of interpersonal need and more, and more[;] . . the necessary funding or economic arrangement for a medical doctorate of [Plaintiff's] own, ideally in the most skykiographically-active (something-like most intellectually-and-emotionally-intelligent[]-active) environment for medical doctorates in the USA or the world depending determination; . . . admission into that or those programs, for the right to persist an independent and oft-for-now-competing philosophy of medical education and practice, including for herself, given especially legal and medical and interrelate provisions such as end-of-life care, insurance, and otherwise; . . . the publication of the necessary materials in contract with Ten Speed Press, an imprint of Penguin Random House, with Random Houses' contracts into the world; . . . the necessary venture capital or arrangements to help build the right technology to meet FEMM's needs. . . . [*sic*]

(*Id.* at 5-6.)

## DISCUSSION

### A.    Sovereign immunity

The Court must dismiss Plaintiff's claims against the United States of America and HHS

under the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits

4

against the federal government, including suits against any agency of the federal government, such as HHS, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency . . . is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived.").

Plaintiff alleges no facts or legal provisions that suggest that the doctrine of sovereign immunity has been waived with respect to her claims against the United States of America and HHS. The Court therefore dismisses Plaintiff's claims against the United States of America and HHS under the doctrine of sovereign immunity, and consequently, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

**B.      Standing**

Plaintiff has also failed to allege facts sufficient to show that she has standing to assert most, if not, all of her claims. Article III, Section 2, of the Constitution limits the jurisdiction of the federal courts "to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "Standing to sue or defend is an aspect of the case-or-controversy requirement." *Arizonians for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). To demonstrate standing, a plaintiff must show that: (1) she has personally suffered some actual or threatened injury as a result of the defendant's alleged illegal conduct; (2) the injury is fairly traceable to the defendant's conduct; and (3) the injury is likely to be redressed by the requested relief. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The burden of establishing standing to sue rests with the party bringing the action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, "a generalized grievance, no matter how sincere, is insufficient to

confer standing. A litigant raising only a generally available grievance . . . and seeking relief that no more directly and tangibly benefits [her] than it does the public at large . . . does not state an Article III case or controversy." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks and citation omitted)."If [a] plaintiff[] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [her] claim." *Mahon*, 683 F.3d at 62 (internal quotation marks and citation omitted); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction . . . is an Art. III as well as a statutory requirement. . . .").

Plaintiff's claims appear to mostly, if not, completely arise from her generalized grievances as to the manner in which sex education, psychiatric education, and medical education in general is carried out within the United States of America; such generalized grievances do not establish standing. *See Hollingsworth*, 570 U.S. at 706. Accordingly, the Court dismisses Plaintiff's claims for lack of standing and, consequently, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Mahon*, 683 F.3d at 62.

**C.      Plaintiff's claims are frivolous**

Under the IFP statute, a court must dismiss an action if it determines that the action is frivolous. *See* 28 U.S.C. §1915(e)(2)(B)(i). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("An action is frivolous when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory." (internal quotation marks and citation omitted)).

Plaintiff, without any legal basis to do so, asks this Court to order the Federal

Government to change how sex education, psychiatric education, and medical education in

general is carried out in the United States of America. She also asks this Court to, again, without

any legal basis: (1) direct the defendants or, perhaps, others to provide her with the funding or

other economic arrangements to allow her to pursue a medical degree; (2) direct Penguin

Random House, under its imprint, Ten Speed Press, to publish the "necessary materials"; and

(3) direct defendants or, perhaps, others to provide "the necessary venture capital or

arrangements to help build the right technology to meet FEMM's needs." (ECF 1, at 5-6.) Since

there is no legal basis for any of these claims for relief, the Court also dismisses Plaintiff's

claims as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

**D.     Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to

cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*,

657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Because it appears that the defects in Plaintiff's complaint cannot be cured with an amendment,

the Court declines to grant Plaintiff leave to amend.

**LITIGATION HISTORY AND WARNING**

Recently, Plaintiff has filed 20 other cases in this court, many of which also name the

United States of America as a defendant. *See Janczuk v. United States,* No. 24-CV-3719 (LTS)

(S.D.N.Y. Aug. 6, 2024) (dismissed as frivolous, warned as to the consequences of continued

frivolous or meritless litigation in this court); *Janczuk v. Fed. Trade Comm'n*, No. 24-CV-3703

(LTS) (S.D.N.Y. Aug. 6, 2024) (same); *Janczuk v. Fed Commc'ns Comm'n*, No. 24-CV-2445

(LTS) (S.D.N.Y. Aug. 6, 2024) (dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii)); *Janczuk v.*

*Inner City Press*, No. 24-CV-2385 (LTS) (S.D.N.Y. May 21, 2024) (dismissed for lack of subject

matter jurisdiction, notice of appeal filed May 21, 2024); *Janczuk v. Fed. Trade Comm'n*, No. 24-CV-3716 (LTS) (S.D.N.Y. May 20, 2024) (dismissed as duplicative); *Janczuk v. United States*, No. 24-CV-3754 (LTS) (S.D.N.Y. filed May 14, 2024); *Janczuk v. United States*, No. 24-CV-3761 (LTS) (S.D.N.Y. filed May 10, 2024); *Janczuk v. United States*, No. 24-CV-3749 (LTS) (S.D.N.Y. filed May 10, 2024); *Janczuk v. United States*, No. 24-CV-3750 (LTS) (S.D.N.Y. filed May 9, 2024); *Janczuk v. United States*, No. 24-CV-3718 (LTS) (S.D.N.Y. filed May 8, 2024); *Janczuk v. United States*, No. 24-CV-3717 (LTS) (S.D.N.Y. filed May 8, 2024); *Janczuk v. United States*, No. 24-CV-3661 (LTS) (S.D.N.Y. filed May 7, 2024); *Janczuk v. United States*, No. 24-CV-3510 (LTS) (S.D.N.Y. filed May 2, 2024); *Janczuk v. United States*, No. 24-CV-3426 (LTS) (S.D.N.Y. filed May 1, 2024); *Janczuk v. United States*, No. 24-CV-3343 (LTS) (S.D.N.Y. filed Apr. 30, 2024); *Janczuk v. United States*, No. 24-CV-2387 (LTS) (S.D.N.Y. Apr. 12, 2024) (transferred to the United States District Court for the Eastern District of New York); *Janczuk v. United States*, No. 24-CV-2150 (LTS) (S.D.N.Y. Apr. 12, 2024) (same); *Janczuk v. United States*, No. 24-CV-2754 (LTS) (S.D.N.Y. filed Apr. 8, 2024); *Janczuk v. United States*, No. 24-CV-2749 (LTS) (S.D.N.Y. filed Apr. 8, 2024); *Janczuk v. United States*, No. 24-CV-2738 (LTS) (S.D.N.Y. filed Apr. 8, 2024).

In light of Plaintiff's litigation history, Plaintiff is again warned that continued submission of actions in this court determined to be frivolous or without merit may result in an order directing Plaintiff to show cause why she should not be barred from filing new civil actions in this court IFP without prior permission to file from the court. *See* 28 U.S.C. § 1651.

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i); Fed. R. Civ. P. 12(h)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated:    August 12, 2024
          New York, New York

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              Chief United States District Judge